UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

        v.                                    CASE NO. 11 Cr.665 (RPP)

H. Clayton Peterson,

        Defendant.

-----------------------------------------------------------x

## MEMORANDUM IN CONNECTION WITH THE FINE TO BE IMPOSED ON H. CLAYTON PETERSON

## INTRODUCTION

Defendant H. Clayton Peterson respectfully submits this memorandum in connection with his sentencing on October 11, 2011. The Court sentenced Mr. Peterson to a two-year term of probation, including three months of home confinement. The Court further ordered forfeiture of the gains attributable to (although not obtained by) Mr. Peterson, which we understand from government counsel to be approximately $63,000. Finally, the Court fined Mr. Peterson $400,000, but permitted counsel to address the appropriateness of the amount to ensure that, in the Court's words, the fine was "fair, but did not [constitute] retribution." Specifically, the Court requested that counsel consider this issue in light of three factors: (1) Mr. Peterson's assets; (2) his lifestyle; and (3) the costs he has and will bear in connection with the instant offense. In light of these factors, and as set forth more fully below, we respectfully submit that an appropriate fine would be $126,000 (for a total payment, including forfeiture, of $189,000). This amount would represent 200% of the funds subject to forfeiture. It would also be a significant sum in light of Mr. Peterson's present liquid assets, inability to obtain further employment in his field, the significant costs he has and will incur, and the modest lifestyle he leads.

1.   <u>Mr. Peterson's Assets</u>

At the outset, we wish to make clear that we are not pleading poverty on Mr. Peterson's behalf. The purpose of what follows is to discuss the extent of Mr. Peterson's assets so that the Court can take this important context into account in determining an appropriate fine. As will be discussed more fully below, Mr. Peterson's employment prospects in his profession – public company accounting – are nil; hence the assets listed below are what he expects to live off for the remainder of his life, which, given that he is 65 and in relatively good health, is expected to be many years. In addition, upon the demise of Arthur Anderson (something Mr. Peterson had

1

nothing to do with), Mr. Peterson lost his entire partner capital account (composed of after-tax contributions made over many years), of approximately $950,000. In addition, upon retirement, he was to be paid approximately $2.5 million to $3 million over ten years, and then $65,000 thereafter until death. These sums were expected to constitute the bulk of his retirement funds. Because they evaporated, he continued to work in his field of expertise. The loss of his employment prospects in connection with this offense is thus especially painful.

(a) *Real Estate*

Mr. Peterson owns or has an interest in four properties. As the PSR indicates, the approximate worth of these assets is $1 million.[1] The four properties are as follows: (1) his three-bedroom home in Denver where he has resided for the past twenty-eight years, which he purchased for $200,000; (2) a two-bedroom home in Beaver Creek, Colorado that was purchased in 1987 for $180,000; (3) a home in Phoenix, Arizona that was purchased in 1994 for approximately $300,000; and (4) a six-week interest in a two-bedroom condominium in Cabo San Lucas, Mexico, which he purchased in 1998 for $300,000. There are no mortgages or liens on these properties.[2]

With respect to the Beaver Creek property, Mr. Peterson rents it to ski vacationers in the winter to pay the yearly costs, and he uses it in the summer to go hiking. The Arizona home was purchased so that he could be near his daughter who was attending Arizona State University at the time; it also afforded his daughter a place to stay briefly as she was transitioning from college to the work force. The six-week interest in the Mexican property is of uncertain value, especially

---

[1] Given the uncertain state of the real estate market, the current value of these assets may be higher.

[2] Significantly, these real estate purchases were made while he was earning a salary at Arthur Andersen, and upon the belief that his capital account and retirement funds from Arthur Andersen would be available to him after he stopped working.

considering the drug wars in Mexico that have affected that country's tourism industry. Similarly, the Phoenix housing market has been significantly affected by the economic downturn. The Beaver Creek property would probably also face saleability issues for similar reasons. Having said that, given the rest of Mr. Peterson's assets, it is likely that he will be forced to attempt to sell one or more of these properties. Moreover, as the descriptions above indicate, none would be considered lavish.

(b) *Liquid Assets*

Mr. Peterson's liquid assets are primarily in two retirement accounts with a combined balance of $2.1 million.[3] He has approximately $70,000 in a checking account, but this amount was recently transferred from his retirement accounts to cover various costs and expenses associated with this action. Significantly, the money in the retirement accounts constitutes accumulated savings over many years, and is taxable upon withdrawal.

Were the Court to impose the contemplated $400,000 fine, it would represent 25% of Mr. Peterson's liquid net worth on a pre-tax basis.

(c) *Other Investments*

Mr. Peterson has also made small investments as a minority partner in a number of real estate partnerships. It is very difficult to determine what these investments are worth given the market, and when, if ever, he will see any returns. In addition, the nature of the holdings are such that they cannot be sold.

---

[3] He has a Keogh account and a Simplified Employee Pension Individual Retirement Account (SEP IRA).

3

2. <u>Lifestyle</u>

Mr. Peterson lives a modest lifestyle. His primary recreational outlets are hiking, playing golf with his son, and spending time with his daughter and granddaughter. Mr. Peterson's lifestyle and financial goals reflect what is most important to him: maintaining and preserving assets for his children and granddaughter, particularly in light of a challenging economic environment.

Due to the wide area radical prostatectomy he underwent in early 2009 to remove his cancerous prostate, Mr. Peterson cannot pursue a romantic life; other than occasional gatherings with friends at local restaurants or at home, he does little socializing.

He owns one car, a 2004 Lexus SUV with approximately 70,000 miles.

As Your Honor noted at the sentencing proceeding, Mr. Peterson is indeed a very good father and grandfather. In addition to spending time with his family, he also gives generously, and has provided substantial assistance to both of his adult children (including helping to pay for housing, etc.). He plans to continue to do so. Mr. Peterson has also given $13,000 to his granddaughter annually since her birth (she is now seven) to establish a college fund for her. He intends to make these yearly contributions regardless of any penalties or other costs he must bare in connection with this offense.

3. <u>Costs</u>

Mr. Peterson has and will continue to bear significant costs associated with his conduct in this matter. To be clear, we understand that many of these costs are natural consequences of the offense. However, we believe that they should be considered in the context of the issue set forth by the Court, i.e., what amount of fine would be fair as opposed to retributive.

(a)   *Loss of Employment*

Mr. Peterson had been serving, and was to serve for the next five years, on the Board of Directors of two companies, for which he was paid approximately $140,000 combined. He resigned those positions shortly before his guilty plea in order to mitigate any negative consequences for those companies. And, with a felony conviction, and an anticipated settlement with the Securities and Exchange Commission ("SEC") that will include a lifetime bar serving as an officer or director of a public company, Mr. Peterson is essentially unemployable in his profession, namely public company accounting.

(b)   *SEC Action*

While we have not reached agreement on the terms of a settlement with the SEC, it is clear that the SEC will be seeking disgorgement and a substantial financial penalty. Whether, and to what extent, Mr. Peterson receives any offset for payments made in connection with this case is very much an open question.

(c)   *Support Provided to Mr. Peterson's Son*

In addition, Mr. Peterson has been supporting his son Drew, and will continue to support him as long as necessary until he can find gainful employment. This includes not only daily living, but also Drew's legal fees, as well. In addition, while Drew does not have the means to pay fines, penalties, and the like in connection either with his criminal case or the SEC action, Mr. Peterson has nonetheless committed, on his son's behalf, to make any such required payments. Mr. Peterson obviously has no obligation to do so, but has undertaken this commitment nonetheless because he believes it is the right thing to do.

## CONCLUSION

For the forgoing reasons, Mr. Peterson respectfully requests that the Court impose a fair, and non-retributive fine of $126,000.

Dated: October 24, 2011
      New York, New York

                              Respectfully submitted,

                              /s/ Steven R. Glaser
                              Steven R. Glaser
                              Skadden, Arps, Slate, Meagher & Flom LLP
                              4 Times Square
                              New York, New York 10036
                              (212) 735-3000
                              StevenGlaser@skadden.com

                              Patrick J. Burke
                              Patrick J. Burke, P.C
                              999 18th Street, Suite 2055
                              Denver, Colorado 80202
                              (303) 825-3050
                              (303) 825-2992 fax
                              patrick-j-burke@msn.com

                              *Attorneys for H. Clayton Peterson*

## CERTIFICATE OF SERVICE

      I hereby certify on this 24th day of October, 2011, I caused a true and correct copy of the foregoing to be filed electronically using the CMF/ECF system, which will send notification to the following:

Michael Levy
Assistant U.S. Attorney
U.S. Attorney's Office for the
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Michael.Levy@usdoj.gov
Attorney for the Government


Dated: October 24, 2011
       New York, New York

                                                By:   /s/ Steven R. Glaser
                                                         Steven R. Glaser